UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| GEORGE K. WALLS and PREEPREM CHAREONSLIP, | ) ) ) Case No. 1:17-cv-226 |
| Plaintiffs, | ) ) Judge Travis R. McDonough |
| v. | ) ) Magistrate Judge Susan K. Lee |
| THE ROOTO CORPORATION, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Before the Court is Defendant The Rooto Corporation's motion for summary judgment (Doc. 74). For the reasons stated hereafter, Defendant's motion is **GRANTED**.

## I. BACKGROUND[1]

On September 28, 2016, Plaintiff George K. Walls ("Walls") purchased four one-gallon bottles of Rooto Professional Drain Opener for use on a four-inch drain at a commercial apartment building he owns.[2] (Doc. 75-1, at 7, 16–18; Doc. 75-8, at 5.) Walls had used Rooto Professional Drain Opener on nine prior occasions with no issue. (Doc. 75-1, at 3–4.) Prior to use of the product, Walls read the instructions and label in their entirety, and he has no criticism of the label or warnings. (*Id.* at 4.) Walls used two containers with no issue, and, as he was opening the third, it splashed or "exploded" on him, burning his skin. (*Id.* at 19; Doc. 75-8, at 3.)

---

[1] For the purposes of summary judgment, the Court will view the facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2] It is uncontested that Walls purchased Rooto Professional Drain Opener on this date.

Walls reported to the emergency room at Parkridge Hospital, where he informed the treating physicians both that he had been taking "Drano" off a shelf when the cap came off and it spilled on him, and, alternatively, that "[a]cid splashed on [his] upper body and face." (Doc. 75-6, at 7–8, 19.) Plaintiffs[3] initiated the instant products-liability action against Defendant on August 16, 2017. (Doc. 1.) Plaintiffs assert claims against Defendant for: (1) negligence; (2) breach of implied warranty; and (3) gross negligence. (*See id.* at 5–9.) Defendant has moved for summary judgment on Plaintiffs' claims, and this motion is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the

---

[3] Plaintiff Walls's wife, Preeprem Chareonslip, asserts a claim only for loss of consortium. (*See* Doc. 1, at 9.)

record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmovant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

Each of Plaintiffs' claims falls under the Tennessee Product Liability Act ("TPLA"), Tennessee Code Annotated § 29-28-101 *et seq*.[4] The TPLA provides, in relevant part that "[a] manufacturer . . . of a product shall not be liable for any injury to a person or property *caused* by the product unless the product is determined to be in a *defective condition* or *unreasonably dangerous* at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-

---

[4] The TPLA defines "product liability action" broadly to include

> all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; **negligence**; **breach of warranty, express or implied**; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

Tenn. Code Ann. § 29-28-102(6) (emphasis added). Accordingly, Plaintiffs' claims are properly considered under the TPLA. Additionally, the parties do not dispute that the TPLA is the applicable governing law in this case. (*See* Docs. 76, 77.)

3

28-105(a) (emphasis added). Thus, to establish a prima facie products-liability claim under Tennessee law, a plaintiff must show that: (1) "the product was defective and/or unreasonably dangerous"; (2) "the defect existed at the time the product left the manufacturer's control"; and (3) "the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). In other words, unless the Rooto Professional Drain Opener was in a defective condition or unreasonably dangerous *when it left the control of Defendant*, there is no liability pursuant to the TPLA. *See King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000). Defendant moves for summary judgment on three grounds, arguing that Plaintiffs cannot establish that Rooto Professional Drain Opener: (1) was in a defective condition at the time it left Defendant's control; (2) was unreasonably dangerous at the time it left Defendant's control; or (3) caused Walls's injuries. (Doc. 76, at 7–21.)

### A. Defective Condition

Defendant argues that Plaintiffs cannot establish that Rooto Professional Drain Opener was in a defective condition at the time it left Defendant's control. (Doc. 76, at 19–21.) The TPLA defines "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102.

In Tennessee, Plaintiffs bear the burden to show there was something wrong with the product when it left Defendant's control. *Fulton v. Pfizer Hosp. Prod. Grp., Inc.*, 872 S.W.2d 908, 911 (Tenn. Ct. App. 1993). "As a general rule, an injury of itself is not proof of a defect and thereby raises no presumption of defectiveness." *Id.* (citing *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir. 1974); *Mullins v. Seaboard Coastline Ry. Co.*, 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974)). Moreover, a manufacturer is not an insurer of a product that it is

4

"accident proof, or incapable of causing injury." *Kerley v. Stanley Works*, 553 S.W.2d 80, 84 (Tenn. Ct. App. 1977). "Likewise, the failure or malfunction of the [product], without more, will not make the defendant liable." *King*, 37 S.W.3d at 435 (citing *Harwell v. American Medical Sys., Inc.*, 803 F. Supp. 1287, 1298 (M.D. Tenn. 1992)). A plaintiff must show that there was something wrong with the product and must trace the plaintiff's injury to some specific defect in the construction or design of the product. *Irion v. Sun Lighting, Inc.*, No. M200200766COAR3CV, 2004 WL 746823, at *4 (Tenn. Ct. App. Apr. 7, 2004).

Defendant contends that "the closest the Plaintiffs can come to . . . proving that the product is defective is the 'assumption' of Plaintiffs' purported expert that the product somehow became contaminated." (Doc. 76, at 20.) Plaintiffs argue that a test conducted by Technical Laboratories[5] "shows that the sulfuric acid content [of Rooto Professional Drain Opener] is 87.48 % . . . less than recommended and testified to by Joon Moon, owner of [Defendant]." (Doc. 77, at 8.) Although not entirely clear, construing Plaintiffs' argument in the light most favorable to Plaintiffs, the Court interprets it to contend that, because test results show Rooto Professional Drain Opener contained less than the "recommended" amount of sulfuric acid, it must have been defective in some way, perhaps by being mixed with a different chemical. This speculation is unconvincing. Defendant points out that the testimony of Joon Moon relied on by Plaintiffs was taken in a completely unrelated case and concerned the concentration of sulfuric acid in Rooto Professional Drain Opener in 2011—at least five years prior to the accident at issue. (Doc. 80, at 4; Doc. 75-12, at 2.) Plaintiffs have offered no proof regarding the "recommended" concentration of sulfuric acid in Rooto Professional Drain Opener at the time of the accident.

---

[5] Defendant points out that Plaintiffs' own expert testified that the test results were not scientifically sufficient for him to opine that the product was only 87% sulfuric acid. (Doc. 79-1, at 30.)

Additionally, although Plaintiffs' expert, John Magee,[6] testified that he had a "hypothesis or assumption" that there was "a contamination problem . . . [o]r something else was introduced to [the drain opener]," he could not identify when the contamination occurred or what the contaminating element was. (Doc. 75-3, at 26.) Although Magee hypothesized that Defendant used a single manufacturing line for multiple products, he admitted he had no proof that Defendant's manufacturing lines were not properly cleaned. (*Id.* at 14.) Moreover, Defendant has introduced uncontradicted evidence to disprove this theory. Defendant's general manager, Richard Lapanowski, stated in his affidavit that:

> Rooto Professional Drain Opener is processed through a separate production line dedicated to that product. Other products manufactured by the Defendant, including ammonia and sodium hydroxide (lye), are processed through entirely different and separate production lines. In fact, the production line for ammonia is physically located approximately 300 feet from the production line for sulfuric acid.

(Doc. 75-4, at 2.) Additionally, Defendant has produced evidence that in 2016 and prior years, Defendant "shipped hundreds of cartons of one-gallon bottles of Rooto Professional Drain Opener . . . [and] has not received any reports of contamination . . . ." (Doc. 75-4, at 2–3.) Plaintiffs fail to offer proof that creates a genuine issue of material fact as to whether Defendant's product was contaminated.

---

[6] Defendant has also filed a *Daubert* motion to exclude the testimony of John Magee, arguing that he fails to meet the expert qualifications set forth in Federal Rule of Evidence 702. (Doc. 70.) According to Defendant, Magee's testimony:

> is based upon erroneous factual assumptions, is scientifically flawed, and is not the product of reliable application of chemistry principles. [Magee] also lacks the educational background to offer reliable testimony to assist the trier of fact to understand the evidence. In addition, [his] testimony . . . is influenced by considerable bias and prejudice that the witness has against this Defendant as a former business competitor.

(*Id.*)

Walls also testified in his deposition that the inner liner of the Rooto Professional Drain Opener, found underneath the cap, was not affixed when he removed the cap. (Doc. 75-1, at 8–9, 12.) However, Plaintiff has not offered any proof that the Rooto Professional Drain Opener left the manufacturer in this condition. In fact, Plaintiffs' expert testified that, other than the content of sulfuric acid, he is not aware of any physical evidence that there was a defect in the product at the time it left Defendant's control. (Doc. 79-1, at 28.) Magee testified that he had no physical evidence that the Rooto Professional Drain Opener leaked or that the cap was loose while sitting on the shelf at the retailer where it was purchased, while being picked up off the shelf by Walls, or at any time before Walls placed it in the back of his pickup truck. (Doc. 75-3, at 27–28.) And Plaintiffs offer no evidence suggesting that the design of the seal is deficient or might result in the seal coming loose. Finally, Walls testified that he has no criticism of the label or warnings on the Rooto Professional Drain Opener. (Doc. 79-1, at 4.) Plaintiff has thus not traced his injury to a specific defect in construction or design.[7] "It is well established that the actual design of the product does not have to be perfect, accident proof, or incapable of causing injury to be considered non-defective." *Alexander v. Zamperla*, No. E200901049COAR3CV, 2010 WL 3385141, at *7 (Tenn. Ct. App. Aug. 27, 2010) (internal quotation marks and citation omitted). Accordingly, there is no genuine dispute of material fact and Plaintiffs have not satisfied their burden to show Rooto Professional Drain Opener was in a defective condition at the time it left Defendant's control.

---

[7] Although Plaintiffs appear to argue that a different type of seal "would have prevented this accident," (Doc. 77, at 5), as explained in more detail below, (*infra* III.B), a departure from the required standard of care is not demonstrated where it is simply shown that there was a different design which may have prevented an injury.

## B. Unreasonably Dangerous

Defendant argues that Plaintiffs cannot establish that Rooto Professional Drain Opener is unreasonably dangerous. A plaintiff must prove that the product was "unreasonably dangerous at the time it left the control of the manufacturer . . . , regardless of the legal theory relied upon." *Shoemaek v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 572 (Tenn. Ct. App. 2003 (quoting *Fulton*, 872 S.W.2d at 911)). An "unreasonably dangerous" product is one that is:

> dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

Tenn. Code Ann. § 29-28-102. Defendant advances two primary arguments: (1) under the TPLA, it is entitled to a statutory presumption that its drain opener is not unreasonably dangerous, a presumption Plaintiffs cannot overcome, and (2) its drain opener cannot be deemed unreasonably dangerous due to Walls's misuse. (Doc. 76, at 11–19.)

Tennessee Code Annotated § 29-28-104(a) provides, in relevant part:

> Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling, warning or instructions for use of a product, *shall raise a rebuttable presumption that the product is not in an unreasonably dangerous condition* in regard to matters covered by these standards.

(emphasis added). Defendant argues it is entitled to this statutory presumption because it is in compliance with all relevant statutes and regulations. (Doc. 76, at 12–14.) Specifically, Defendant points to a laboratory analysis and report issued by the U.S. Consumer Product Safety

8

Commission ("CPSC"),[8] in which CPSC approved Rooto's Professional Drain Opener packaging design and cautionary labeling.[9] (Doc. 75-4, at 4–5.) Plaintiffs' expert also agrees that Rooto Professional Drain Opener complies with all relevant regulations. (Doc. 75-3, at 33–34.) Accordingly, Defendant is entitled to the statutory presumption.

To rebut the presumption, Plaintiffs appear to argue that Rooto Professional Drain Opener is unreasonably dangerous because a different type of seal "would have prevented this accident." (Doc. 77, at 5.) Specifically, Plaintiffs point to testimony by Magee identifying an induction seal as an alternative that would have prevented the accident, regardless of whether it was a cap failure or a commingling of chemicals that caused it. (Doc. 75-3, at 41.) Plaintiffs also point to emails exchanged between Lapanowski and Mold-Rite Corporation as evidence that Defendant was considering "a different type of seal" on its drain opener twenty-eight days prior to Walls's injury. (*Id.* at 37–39.)

---

[8] The CPSC administers the Federal Hazardous Substances Act ("FHSA"), the Poison Prevention Packaging Act ("PPPA"), and their implementing regulations at 16 C.F.R. §§ 1500 and 1700, respectively. (Doc. 75-4, at 4.)

[9] Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Plaintiffs argue that the CPSC report and analysis "does not meet the requirements of Federal Rule of [Evidence] 901(7) . . . as it is not certified by a business record affidavit." (Doc. 77, at 4.) Defendant responds that the affidavit of the general manager Lapanowski "has established that the [CPSC report] was received by [Defendant] in the normal course of its business and is a business record of the company." (Doc. 80, at 2.) The Court agrees with Defendant. *See, e.g.*, *Thomas v. Harvey*, 381 F. App'x 542, 546 (6th Cir. 2010) ("Finally, the documents attached to the Cook declaration were authenticated by the Cook declaration itself under Federal Rules of Evidence 901(a)."); *United States v. Eastwood*, No. 2:09-CV-168, 2017 WL 3658874, at *3 (E.D. Tenn. Aug. 2, 2017) ("Mr. Hall is . . . clearly familiar with Mr. Eastwood's case, and his declaration authenticates the tax transcripts for purposes of Plaintiff's Motion for Summary Judgment."); Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); Fed. R. Evid. 803.

Even assuming an induction seal *would have* prevented the accident, "a departure from the required standard of care is not demonstrated where it is simply shown that there was a better, safer, or different design which would have averted the injury." *Kerley*, 553 S.W.2d at 84. "A manufacturer is not required to incorporate the ultimate safety features in a product." *Shoemake*, 152 S.W.3d at 573. Additionally, "the absence of other accidents tends to negate any claim that the product is dangerous." *Mohr v. DaimlerChrysler Corp.*, No. W200601382COAR3CV, 2008 WL 4613584, at *5 (Tenn. Ct. App. Oct. 14, 2008). Plaintiffs have pointed to no evidence of other accidents caused by Rooto Professional Drain Opener, and Walls testified that he had used the product himself on nine prior occasions with no issue. (Doc. 75-1, at 3–4); *see also id.* ("In this case, the evidence showed that there have been millions of minivans of this design manufactured and sold by DCC and the record does not contain evidence of a single accident tending to show that the Caravan was not crashworthy."). Apart from suggesting that an induction seal would have been a better alternative, Plaintiffs have presented no proof that Rooto Professional Drain Opener was unreasonably dangerous when it left Defendant's control because it violated some standard of care or quality in the industry.[10] *See Shoemake*, 152 S.W.3d at 573 ("Plaintiffs have offered only suggestions but have presented no proof that [defendants] failed to employ or follow proper manufacturing procedures or that the design of the [product] was deficient."). In fact, to the contrary, Plaintiff's expert agrees Rooto Professional Drain Opener met industry standards. (Doc. 75-3, at 33–34.) Based on this evidence, there is no genuine dispute of material fact that the drain opener was not in a defective

---

[10] Defendant's packaging expert, Dr. Goldman, examined the incident bottle and a second container of Rooto Professional Drain Opener and concluded in his report, among other things, that there is not any evidence of faulty or defective packaging. (Doc. 75-2, at 1–2.)

condition or unreasonably dangerous at the time it left Defendant's control.[11] Accordingly, Defendant is entitled to summary judgment.[12]

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 74). Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**.[13]

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[11] Because the Court finds there is no genuine issue of material fact as to whether the product was unreasonably dangerous at the time it left Defendant's control, it need not reach Defendant's argument that Defendant cannot be held liable if the drain opener was made unreasonably dangerous by Walls's abnormal use.

[12] Because the Court finds there is no genuine issue of material fact as to whether the product was defective or unreasonably dangerous when it left Defendant's control, it need not reach the question of causation.

[13] Preeprem Chareonslip also brought a claim for loss of consortium. (*See* Doc. 1.) "The right to recover for loss of consortium is independent of the spouse's right to recover for the injuries themselves, however, the claim 'will always be 'derivative' in the sense that the injuries to his or her spouse are an element are must be proved.'" *Wiley v. Danek Med., Inc.*, No. 95-2542, 1999 WL 33537314, at *9 (W.D. Tenn. May 11, 1999) (quoting *Swafford v. City of Chattanooga*, 743 S.W.2d 174 (Tenn. Ct. App. 1987)). Because the Court granted Defendant's motion for summary judgment on all of Walls's claims, Chareonslip's claim must also fail.